Barbara SWAN and Paul Swan,
Plaintiffs–Appellants,

v.

FARMERS INSURANCE EXCHANGE,
Defendant–Appellee.

No. 04CA2282.

Colorado Court of Appeals,
Div. III.

April 20, 2006.

Bond & Morris, P.C., David M. Tenner, Denver, Colorado, for Plaintiffs–Appellants.

Lambdin & Chaney, LLP, Suzanne Lambdin, L. Kathleen Chaney, Denver, Colorado, for Defendant–Appellee.

ROY, J.

In this action concerning the per person liability limits in an automobile insurance policy, Barbara and Paul Swan (the insureds) appeal the trial court's summary judgment in favor of Farmers Insurance Exchange (the insurer). We affirm.

The insureds and their minor son were insured under an automobile policy issued by the insurer. On July 5, 2001, the minor son, while driving the insureds' automobile, was involved in a vehicle-pedestrian accident that injured two sisters. One sister (the injured sister) was seriously injured, and the other (the deceased sister) died from her injuries.

The insureds and their son were sued by (1) the deceased sister's estate for medical and funeral expenses; (2) the deceased sister's parents for wrongful death; and (3) the

injured sister for personal injuries she sustained as a result of the accident.

The insurer provided a defense as required by the policy. The insureds settled with all the parties for a total of $300,000. The insureds' policy provided bodily injury coverage in the amount of $100,000 per person and $300,000 per occurrence. The insurer paid $200,000 toward settlement of the claims based upon the $100,000 per person liability limits. The insureds provided $100,000 of their personal funds for the settlement.

The insureds then filed this action against the insurer for its failure to fund the entire settlement. They asserted breach of contract, bad faith breach of insurance contract, and violation of the Colorado Consumer Protection Act, and they sought damages in the amount of their contribution to the settlement ($100,000) together with punitive damages. The insureds filed a motion for partial summary judgment as to their breach of contract claim. The insurer filed a cross-motion for summary judgment as to all claims. The trial court denied the insureds' motion and granted the insurer's motion. This appeal followed.

The declarations page of the insurance policy provided coverage for bodily injury of $100,000 for each person and $300,000 for each occurrence. The policy defines "bodily injury" as "bodily injury to or sickness, disease or death of any person."

The insuring language of the policy stated: We will pay damages for which any insured person is legally liable because of bodily injury to any person ... arising out of the ownership, maintenance or use of a private passenger car ....

The limits of liability are, in pertinent part, as follows:

The bodily injury liability limit for "each person" is the maximum for bodily injury sustained by one person in any occurrence. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.

If the financial responsibility law of the place of the accident treats the loss of consortium as a separate claim, financial responsibility limits will be furnished.

2. Subject to the bodily injury liability limit for "each person" the bodily injury liability limit for "each occurrence" is the maximum combined amount for bodily injury sustained by two or more persons in any occurrence.

. . . .

4. We will pay no more than the maximum limits provided by this policy regardless of the number of vehicles insured, insured persons, claims, claimants, policies, or vehicles involved in the occurrence.

The question on appeal is whether the parents of the deceased sister who brought a wrongful death claim are a "person" separate and apart from the deceased sister within the meaning of the declarations, the insuring language, or the limitations of the policy, such that a separate "per person" policy limit applies to them. We answer the question in the negative.

On appeal, the insureds assert, as they did in the trial court, that the policy is ambiguous on its face; that their interpretation of the policy is reasonable; and that the insurer must provide an additional $100,000 of coverage up to the per occurrence limit for the wrongful death claims made against them by the deceased sister's parents.

The claimed ambiguities are that (1) the declarations page does not define "each person"; (2) the first sentence of the limits of liability section applies only to "bodily injury" sustained, and hence wrongful death claims are not so limited; and (3) the phrase "injury to the relationship" is ambiguous and should be interpreted to include a wrongful death claim.

We review a trial court's ruling on a motion for summary judgment de novo. *Ryder v. Mitchell*, 54 P.3d 885 (Colo.2002). Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814 (Colo.2004).

We review de novo the interpretation of an insurance contract. *Mgmt. Specialists, Inc.*

*v. Northfield Ins. Co.*, 117 P.3d 32 (Colo.App. 2004). Unless there is an ambiguity in the policy language, it must be enforced as written. *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354 (Colo.1993).

The trial court concluded that the policy was unambiguous because it clearly sets the limits on damages payable by the insurer for one person who sustains bodily injury in an accident or occurrence, and the limit of the insurer's liability does not turn on the number of persons who may suffer damage arising from the bodily injury, including death, of a person suffering bodily injury in the accident.

## I.

The insureds first contend that the phrase "each person" is ambiguous and that they are a "person" within the meaning of the policy. We disagree.

Neither the declarations nor the definitions define the term "each person." However, the limits of liability provisions state that the maximum bodily injury benefit for "'each person' is the maximum *for bodily injury sustained by one person* in any occurrence" (emphasis added). The policy defines "bodily injury" as "bodily injury, sickness, disease or death."

Here, the deceased sister's death clearly falls within the definition of "bodily injury." And giving the words of the policy their plain and ordinary meaning, we conclude that the phrase "each person" is unambiguous. *See Spaur v. Allstate Ins. Co.*, 942 P.2d 1261, 1263 (Colo.App.1996) (holding that the phrase "each person" in an uninsured motorist provision unambiguously set forth "the total limit for all damages arising out of bodily injury to one person in any one motor vehicle accident").

■ Our conclusion is consistent with the statement in *Couch on Insurance*, which also cites to authority from other jurisdictions:

[W]here a minor child is injured by an insured, the minor's parent's claim for recovery of loss of the minor's service and the minor's medical expenses under the terms of an automobile liability policy do not make the parent a separate "person"

for purposes of recovering more than the policy limits of liability for "bodily injury" to "each person."

12 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 170.8 (3d ed.1998); *see United Servs. Auto. Ass'n v. Lilly*, 217 Cal.App.3d 1396, 266 Cal.Rptr. 691 (1990); *Am. Family Mut. Auto. Ins. Co. v. Johnson*, 149 Ind.App. 26, 269 N.E.2d 560 (1971); *Lepic v. Iowa Mut. Ins. Co.*, 402 N.W.2d 758 (Iowa 1987); *Sharff v. Ohio Cas. Ins. Co.*, 584 So.2d 1223 (La.Ct.App.1991); *Gaines v. Standard Accident Ins. Co.*, 32 So.2d 633 (La.Ct.App.1947); *McNeill v. Metro. Prop. & Liab. Ins. Co.*, 420 Mass. 587, 650 N.E.2d 793 (1995); *Faber v. Roelofs*, 311 Minn. 428, 250 N.W.2d 817 (1977); *Integrity Ins. Co. v. Naleway* 719 S.W.2d 24 (Mo.Ct.App.1986); *DeFelice v. Beall*, 274 N.J.Super. 592, 644 A.2d 1136 (App.Div.1994); *Redcross v. Aetna Cas. & Sur. Co.*, 146 A.D.2d 125, 539 N.Y.S.2d 146 (1989); *Howard v. Travelers Ins. Cos.*, 115 N.C.App. 458, 445 S.E.2d 66 (1994); *Williams v. Grange Mut. Cas. Co.*, 104 Ohio App.3d 197, 661 N.E.2d 763 (1994); *Richie v. Am. Fam. Mut. Ins. Co.*, 140 Wis.2d 51, 409 N.W.2d 146 (Ct.App.1987).

Also, the policy language used here is identical to that used in the insurance policies at issue in *Farmers Insurance Co. v. Jokan*, 30 Kan.App.2d 1213, 57 P.3d 24 (2002), and *Farmers Insurance Co. v. Rosen*, 17 Kan. App.2d 468, 839 P.2d 71 (1992). In both cases the court concluded that the language was unambiguous. We have found no authority to the contrary.

Therefore, we conclude that the parents of the deceased sister are not a "person" within the meaning of the policy such that they are entitled to a separate "each person" limit.

## II.

The insureds next contend that the "each person" limit is ambiguous because it refers only to "bodily injury" and that a reasonable person would not read it to include a wrongful death claim. Therefore, they argue, wrongful death is not included in that limit. We disagree.

This argument appears to ignore the fact that that "bodily injury" is a defined term

and includes death. Because the decedent cannot bring a wrongful death action for his or her own death, the "each person" limitation must include a wrongful death claim by the spouse, child, or parent of the decedent.

The insureds attempt to bolster their argument with language from the uninsured-underinsured motorists (UM/UIM) provision, which states, "[W]e will pay for all damages resulting from bodily injury sustained by one person in any one accident or occurrence." They argue that, relying on this language, a reasonable person could read the "each person" liability limit not to include wrongful death because the UM/UIM language clearly permits wrongful death claims. However, both provisions use the defined term "bodily injury," which, as we have already concluded, includes death.

### III.

The insureds also argue, and we do not agree, that the second sentence in the following paragraph of the limits of liability provision creates an ambiguity:

The bodily injury liability limit for "each person" is the maximum for bodily injury sustained by one person in any occurrence. *Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.*

(Emphasis added.)

The insureds argue that the second sentence indicates that not all claims arising from "bodily injury" are included in this limit and instead only claims for loss of consortium and injury to the relationship are included. In our view, the second sentence is clearly not intended to limit or eliminate the first, which uses, again, the defined term "bodily injury."

The insureds also resort to the UM/UIM language, which is broader and refers to "[t]he uninsured motorist bodily injury sustained by one person in any one accident or occurrence." They argue this language could lead a reasonable reader to conclude that "bodily injury" as used in the indemnity limits is narrower and does not include damages for wrongful death. Again, we conclude to

the contrary. *See Kinsella v. Farmers Ins. Exch.,* 826 P.2d 433 (Colo.App.1992).

### IV.

The insureds also argue that the phrase "injury to the relationship" is ambiguous because the parents of the deceased sister did not bring a claim for loss of consortium or "injury to the relationship." We disagree.

At the outset, we note that the nature of the claims brought by the parents of the deceased sister does not govern the terms of the policy, nor does it render the policy ambiguous. And while "injury to the relationship" has no accepted meaning of which we are aware, it is used in conjunction with the term "loss of consortium," which has an accepted meaning. "Loss of consortium" means loss of "the society, companionship, and services of [a] spouse." *Lampton v. United Servs. Auto. Ass'n,* 835 P.2d 532, 534 (Colo.App.1992).

Used in conjunction with "loss of consortium," the phrase "injury to the relationship" is, in our view, limited to the spousal relationship. But even if that were not the case, other courts have held that the phrase incorporates wrongful death claims. *See Clark v. Scarpelli,* 91 Ohio St.3d 271, 283–84, 744 N.E.2d 719, 731 (2001); *see also Farmers Ins. Co. v. Jokan, supra.*

The use of the phrase "injury to relationship" does not render the policy ambiguous as to the "each person" indemnity coverage limit such as to remove wrongful death from that limit.

### V.

The insureds also rely on the third sentence in the limits of liability section for the proposition that a wrongful death claim may not be restricted by the policy's indemnity limits because it is not a derivative claim in Colorado. We disagree.

The third sentence states: "If the financial responsibility law of the place of the accident treats the loss of consortium as a separate claim, financial responsibility limits will be furnished."

While this sentence refers to claims for loss of consortium, the insureds would have us expand it to allow a separate benefit for wrongful death because wrongful death claims, like loss of consortium claims, are separate, nonderivative claims in Colorado. *See* §§ 13–21–102.5, 13–21–203, C.R.S.2005; *Lee v. Colo. Dep't of Health*, 718 P.2d 221 (Colo.1986)(loss of consortium is an injury that gives rise to a separate right of recovery).

The insureds rely, in part, on *Farmers Insurance Exchange v. Versaw*, 99 P.3d 796 (Utah 2004), which held under identical policy language that if loss of consortium is codified as a separate claim at the place of the accident, the limits of liability in the previous two sentences do not apply. The Utah court ignored the first part of the sentence, which requires that claims for loss of consortium arise from the financial responsibility law, and in Utah, those claims do not so arise. *See* Utah Code Ann. § 30–2–11 (1998). While Colorado recognizes a loss of consortium as a separate, not derivative, claim, it does not do so in the financial responsibility law. *See* § 42–7–101, et seq., C.R.S.2005.

But even were that not the case, the policy provision dealing with loss of consortium—and the fact that both that claim and wrongful death are separate, rather than derivative—does not require that both claims be treated the same under the policy. Further, even if the provision helps the insureds, the financial responsibility limits in Colorado are $25,000, not $100,000. For the reasons stated, we decline to follow the *Versaw* holding.

Therefore, we conclude that the insureds exhausted their coverage limit upon the insurer's payment of $100,000 to the injured sister and $100,000 to the estate of the deceased sister. We decline to extend the coverages to claims or limits "beyond the scope of risks which have been clearly covered in the insurance policy." *Lampton v. United Servs. Auto. Ass'n, supra*, 835 P.2d at 534 (quoting *Martinez v. Hawkeye–Sec. Ins. Co.*, 195 Colo. 184, 576 P.2d 1017 (1978)).

Accordingly, we conclude that the trial court correctly granted summary judgment in favor of the insurer.

The judgment is affirmed.

Judge LOEB and Judge NIETO * concur.